# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SIBEL EDMONDS | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 05-540 (RBW) |
| UNITED STATES OF AMERICA | * | |
| | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR LEAVE TO WITHDRAW AS PLAINTIFF'S COUNSEL

NOW COME the attorneys for plaintiff Sibel Edmonds, pursuant to LCvR 83.2(h) and 83.6(c), (d) and in satisfaction of Rule 1.16 of the governing D.C. Rules of Professional Conduct, to hereby seek leave from this Court to withdraw as counsel of record. In support of this Motion, Mark S. Zaid, Esq. and Roy W. Krieger, Esq. have respectfully filed accompanying Certificate declarations attached as Exhibits "1" and "2", respectively.

The plaintiff's counsels' certify that this request for withdrawal is not based on any fact or action of the plaintiff that would prejudice, or even necessitate a response by, the defendant. The Certificate declarations should make that clear to the Court. A copy of this Motion and accompanying documents have been provided to the plaintiff at her last known address.

The plaintiff has notified us of her objection to the granting of this Motion. Counsel for the defendant has stated the Government takes no position on the granting of this Motion. A proposed Order accompanies this Motion.

Date:  December 13, 2005

Respectfully,

/s/

_____

Roy W. Krieger, Esq. (D.C. Bar #375754)
Mark S. Zaid, Esq. (D.C. Bar #440532)
Krieger & Zaid, PLLC
1920 N Street, N.W., Suite 300
Washington, D.C.  20036
(202) 223-9050

Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of December 2005, a copy of the

foregoing Motion for Leave to Withdraw as Plaintiff's Counsel was delivered via

facsimile and mailed, first class, postage pre-paid, to:

Kimberly D. Ziropoulos
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888, Ben Franklin
Facsimile: (202) 616-5200

and via Federal Express and e-mail to:

Sibel Edmonds
6631 West Wakefield Drive
Alexandria, Virginia 22307

/s/

_____

Mark S. Zaid, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIBEL EDMONDS | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 05-540 (RBW) |
| UNITED STATES OF AMERICA | * |
| | * |
| Defendant | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR LEAVE TO WITHDRAW AS PLAINTIFF'S COUNSEL**

Attorneys Roy W. Krieger ("Krieger") and Mark S. Zaid ("Zaid"), both of the law firm of

Krieger & Zaid, PLLC, are seeking an Order from the Court to permit their withdrawal from

representation of the plaintiff Sibel Edmonds ("Edmonds") pursuant to LCvR 83.2(h) and

83.6(c), (d) and in satisfaction of Rule 1.16 of the D.C. Rules of Professional Conduct.

Withdrawal is sought primarily on the basis of Ms. Edmonds' repeated obdurate and vexatious

conduct which has rendered the representation unreasonably difficult.

Given that this case is at the initial stages of its proceeding the granting of this Motion will

not cause any undue delay or prejudice any of the parties.

**ARGUMENT**

The rules surrounding withdrawal of counsel from a case under the present circumstances

are straight forward. Local Rule 83.6 (c) and (d) state, respectively, that:

> If a trial date has been set, or if a party's written consent is not obtained, or if the
> party is not represented by another attorney, an attorney may withdraw an
> appearance for a party only by order of the court upon motion by the attorney
> served upon all parties to the case. Unless the party is represented by another
> attorney or the motion is made in open court in the party's presence, a motion to
> withdraw an appearance shall be accompanied by a certificate of service listing
> the party's last known address and stating that the attorney has served upon the
> party a copy of the motion and a notice advising the party to obtain other counsel,
> or, if the party intends to conduct the case *pro se* or to object to the withdrawal, to
> so notify the Clerk in writing within five days of service of the motion.

....

The court may deny an attorney's motion for leave to withdraw if the withdrawal would unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not be in the interest of justice. The Clerk shall mail to the affected party a copy of the order granting or denying the motion for leave to withdraw.

Additionally, the relevant portions of Rule 1.16 of the governing D.C. Rules of Professional Conduct hold:

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if:

(4) The representation will result in an unreasonable financial burden on the lawyer *or obdurate[1] or vexatious[2] conduct on the part of the client has rendered the representation unreasonably difficult*;

(c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) In connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by Rule 1.8(i).

## I. PLAINTIFF SIBEL EDMONDS PUBLICLY ATTACKED HER COUNSEL'S REPUTATION AND INTEGRITY THEREBY RENDERING CONTINUED REPRESENTATION UNREASONABLY DIFFICULT

Messrs. Krieger and Zaid have represented Ms. Edmonds since March 2004 in several litigation matters. The primary case, Edmonds v. U.S. Dep't of Justice et al., Civil Action No. 02-1448 (RBW), was initially inherited from another law firm, Kohn, Kohn & Colapinto, which had also terminated their relationship, somewhat abruptly, with Ms. Edmonds after two years of

---

[1] Obdurate is defined by *www.dictionary.com* as "Hardened in wrongdoing or wickedness; stubbornly impenitent"; "Hardened against feeling; hardhearted"; and "Not giving in to persuasion; intractable."

[2] Vexatious is defined by *www.dictionary.com* as "Causing or creating vexation; annoying"; "Full of annoyance or distress; harassed"; "Intended to vex or annoy."

representation. This Court dismissed that case in July 2004, <u>Edmonds v. U.S. Dep't of Justice et al.</u>, 323 F. Supp. 2d 65 (D.D.C. 2004), <u>aff'd</u>, 2005 U.S. App. LEXIS 8116 (D.C. Cir. May 6, 2005), <u>cert. denied</u>, 2005 U.S. LEXIS 8589, 74 U.S.L.W. 3321 (U.S. Nov. 28, 2005), and all appeal challenges have been exhausted.[3] Mr. Zaid has also represented Ms. Edmonds in two other related actions. The first, which is no longer pending, was under the Administrative Procedure Act, <u>Edmonds v. Dep't of Justice</u>, Civil Action No. 04-1152 (D.D.C.)(RMU), and the second is under the Freedom of Information Act, <u>Edmonds v. Dep't of Justice</u>, Civil Action No. 04-1623 (D.D.C.)(RMU), and is awaiting a ruling from Judge Urbina.

During the course of the representation there have been several occasions where the undersigned counsel has notified Ms. Edmonds of their intention/interest in withdrawing from representation due to, what counsel viewed as, obdurate or vexatious conduct on the part of Ms. Edmond that rendered the representation unreasonably difficult. <u>See</u> Declaration of Mark S. Zaid, Esq. at  ¶5(dated December 12, 2005)("Zaid Decl."), attached at Exhibit "1". Those occasions were all resolved amicably and because they were private between only the undersigned counsel and Ms. Edmonds and fall within the attorney-client privilege, counsel will refrain from discussing any specifics unless otherwise directed by this Court. Suffice to say the nature of the conduct primarily related to differences in strategy and was not too dissimilar to the current conflict.

The latest conflagration, however, is vastly different. On this occasion Ms. Edmonds saw fit to publicly defame Mr. Zaid, as well as place him in a false light, to members of the very specific community in which he functions as an attorney (and as for many years). The damage to their relationship extends too deep this time to be remedied in any reasonable period of time. The fact

---

[3] For purposes of the appeals the American Civil Liberties Union served as primary counsel and Krieger & Zaid were co-counsel.

that Ms. Edmonds, as will be seen from her writings, cannot fathom the schism she has caused is as much a part of the problem as her conduct. The circumstances of what transpired are set forth in detail in the accompanying Certificates/declarations, which include the relevant e-mails.[4]

However, for summary purposes, Mr. Zaid was scheduled to testify before a Subcommittee of the U.S. House of Representative's Government Reform Committee on the topic of national security whistleblowers and security clearances. Mr. Zaid frequently represents cases involving these issues. Id. at ¶¶3,7. Ms. Edmonds, in her capacity as President of the National Security Whistleblower's Coalition ("NSWB") (*http://www.nswbc.org/index.htm*), opposed the hearing on the grounds that it did not include anyone from her organization, or any perceived national security whistleblowers, as witnesses. Id. at ¶7. Mr. Zaid's participation was not an issue, and was actually supported by both Ms. Edmonds and the NSWB. Id.

Though both shared the same ultimate objectives, Mr. Zaid and Ms. Edmonds fundamentally differed on the course of strategy that the NSWB was pursuing with respect to this Congressional hearing. As a result, at least in part, due to the actions of Ms. Edmonds the scheduled hearing was postponed until January 2006 (Mr. Zaid is still scheduled to be a witness). In response to correspondence Ms. Edmonds sent to the Subcommittee Chief Counsel, Larry Halloran, Mr. Halloran sent a response that was copied to several of the witnesses, including Mr. Zaid, and their organizations, all of whom were ostensibly working together for the hearing. Id. at ¶9; Exhibit "A". This e-mail started the disintegration.

---

[4] None of the information set forth in any document associated with this filing falls within the attorney-client privilege. All facts and accompanying exhibits involved third-parties outside of the representation. Undersigned counsel is more than willing to provide this Court with additional information that is privileged under seal if requested. Of course, Ms. Edmonds can waive the privilege if she desires and submit information that would otherwise fall within. If that occurs, counsel will respond within the appropriate ethical boundaries.

One of the witnesses immediately responded with his own position of the issues. Id. at ¶10;
Exhibit "B". Mr. Zaid then simply articulated to only the involved witnesses and the leadership
of their organizations (he deleted the Congressional staff from the e-mail as they had no need to
know of the internal dispute), his position on what transpired and his concerns regarding the turn
of events. There were no personal attacks whatsoever. Id.; Exhibit "C".  The NSWB's Senior
Advisor, Dr. William Weaver, responded to Mr. Zaid's comments. Id.; Exhibit "D". This led Mr.
Zaid to further articulate his position and concerns regarding the organization's stance in relation
to the hearing, and especially the question of who would best be a witness in this particular
hearing. Id.; Exhibit "E". The key comment that he made, which was based on years of
experience with national security cases/clients and lobbying (which included testifying before
Congress on several occasions), which set off Ms. Edmonds, was:

> Bill, with all due respect, who exactly did NSWBC want to testify? You? Sibel?
> Neither of whom has any - to my knowledge - actual experience with security
> clearances either. Many of the NSWBC's members never had a security clearance
> problem either. And for those who did, there is little, if any, evidence that they
> were retaliated against for being whistleblowers. The fact is that anything can be
> utilized as a "legitimate" reason to strip someone of their clearance. Nor would
> many NSWBC members make for a very good witness (and I have met many of
> them). Either they have too many negatives associated with their case or they
> would be too emotional or disjointed in their testimony. These are legitimate
> concerns.

As would seem obvious on its face, Mr. Zaid set forth a general position regarding his
concerns as to the need/desire to have a NSWB member participate at the hearing as a witness.
No specific person was mentioned. No specific case was referenced. At no time was the
credibility of any particular member ever called into question. Indeed, credibility was never
referenced. In fact, Mr. Zaid specifically wrote Ms. Edmonds that "You know I adore and
support you, both personally and professionally, but in my opinion this issue was seriously
mishandled and caused significant harm to the cause we all support. The question now is whether
that harm is temporary or permanent." Id. at ¶11; Exhibit "F". Again, this was nothing more

than a comment concerning strategy, and should not reasonably be construed as a personal attack on Ms. Edmonds, much less any national security whistleblower.

Ms. Edmonds forwarded Mr. Zaid's response, apparently, to more than 100 persons. The exact scope of the dissemination is not known but at the very least it included the majority, if not all, of the members of the NSWB, several of whom have been or are clients of Mr. Zaid or have approached him for representation. Were it just the text of Mr. Zaid's e-mail there would be no issue. However, Ms. Edmonds took it upon herself to include commentary that was extremely unfavorable and defamatory to Mr. Zaid. She also completely distorted Mr. Zaid's position and placed him in a false light that further denigrated his reputation. Id. at  ¶12; Exhibit "G". Instead of accurately quoting Mr. Zaid as writing *"Nor would many NSWBC members make for a very good witness (and I have met many of them). Either they have too many negatives associated with their case or they would be too emotional or disjointed in their testimony. These are legitimate concerns."* Ms. Edmonds claimed he wrote: *"I have met almost all NS whistleblowers, none of them would make credible witnesses..."* The sentiments expressed in Ms. Edmonds' characterization are not even close to what Mr. Zaid wrote.

Ms. Edmonds also insinuated or stated outright falsely that Mr. Zaid has portrayed himself as a "supposed guardian angle of WBs", that he has been acting adversely to the interests of whistleblowers behind their back to Congress, that he is "sour", that individuals and entities have questioned his qualifications to represent whistleblowers, that he is a "disgusting careerist" who has lived off of whistleblowers, and questioned what he has achieved for whistleblowers. Id. at ¶13; Exhibit "G".

Dr. Weaver then added his response to Mr. Zaid's e-mail. Id. at  ¶14; Exhibit "H". Ms. Edmonds then forwarded that e-mail, presumably to the same list of recipients as her prior e-mail, and specifically insinuated that Mr. Zaid was no "friend" of national security

whistleblowers. Id.; Exhibit "I". These two e-mails led to several disparaging e-mails from her recipients specifically negatively commenting about Mr. Zaid, particularly based on the false characterizations Ms. Edmonds promoted. Id.; Exhibit "J". Mr. Zaid only knows of these e-mails because they were sent to him specifically and is not aware of whether Ms. Edmonds included bccs that would not appear on his copy or if the messages were forwarded elsewhere. For all Mr. Zaid knows there were dozens of negative e-mails and discussions further defaming his character all due to Ms. Edmonds' actions. Ms. Edmonds continued to send disparaging e-mails concerning Mr. Zaid to third parties with further false assertions that he was "bitter" and negatively insinuating that he has lost perspective of his beginnings. Id.; Exhibit "K".

Ms. Edmonds' husband, who also is very active with the NSWB (and will be a board member upon incorporation) and essentially is also a client given his spousal relationship, sent a long e-mail attacking Mr. Zaid and particularly his credibility. Id. at ¶15; Exhibit "L". The ending to his e-mail said it all: "Therefore you have a choice to make; you can either come on board and work with NSWBC to try to affect positive change, or you can take your ball and go home. If you choose the later, then please stay out of the way, for if you are not going to be part of the solution, then you are part of the problem." Id. This has been a common theme to Mr. and Ms. Edmonds' conduct: either you are allied with them, or you are against them and an enemy.

Mr. Zaid, of course, believed it necessary to respond to the defamatory personal attacks, and he twice asked that his response be forwarded to the NSWB members. Id. at ¶16; Exhibit "M". From subsequent e-mail transmissions, and notwithstanding Ms. Edmonds' assurance she would do so, this was apparently never done. Following Mr. Zaid's responses both Mr. and Ms. Edmonds seemed to backtrack from their prior statements, or at the very least wrote very conflicting and contradictory comments that at times could even be considered praiseworthy (their tone has dramatically changed since the undersigned counsel notified them of their intent

7

to withdraw, and those e-mails can be provided to the Court under seal upon request). <u>Id</u>.;

Exhibit "N". For example, Ms. Edmonds wrote:

> And one last thing, you were and are my attorney, I have always been proud of being represented by you; and how could I be perceived as going around and putting down my own attorney; which I never did.  Who do you think we would call to get advice on legal aspects when we are getting ready to testify? Right; you know the answer: You.

<u>Id</u>. Despite Ms. Edmonds' purported rationale, no reasonable person can distinguish between this positive comment and the negative attacks she launched upon Mr. Zaid. Clearly she was, in her own words, "putting down my own attorney".

At no time since the recent controversy arose has either Ms. Edmonds or her spouse apologized to Mr. Zaid. At no time has either conveyed any willingness to apologize or issue even clarifying statements concerning Mr. Zaid to those who received the disparaging e-mails sent by Ms. Edmonds or Mr. Edmonds. These e-mails attacked Mr. Zaid on a very personal level. They called into question his bona fides and his intentions. They disparaged his professional reputation in the very community in which he devotes much of his time. The damage that has been caused could be wide reaching and possibly never corrected. <u>Id</u>. at  ¶17.

It is nonsensical to think that this has not or should not impact the legal relationship that exists between Ms. Edmonds and the undersigned. Ms. Edmonds may wish to believe that her derogatory and very public, comments about Mr. Zaid is irrelevant to her desire to have Mr. Zaid and Mr. Krieger represent her interests, but it is certainly not irrelevant to Mr. Zaid or Mr. Krieger's desire or ability to represent her interests. An attorney should not have sit idly by while a client publicly disparages their reputation upon a whim or reflex. Attorneys are not beholden to their clients for all eternity and just as clients can "fire" their attorney, so too can an attorney "fire" their client.

Mr. Krieger, though not the subject of or participant in these e-mails transmissions, as a partner in Krieger & Zaid, PLLC, owes a specific fiduciary duty to Mr. Zaid. See Declaration of Roy W. Krieger, Esq. at ¶¶4-6 (dated December 12, 2005), attached at Exhibit "2". In light of the public disparagement and defamation of Mr. Zaid, Mr. Krieger can no longer continue to represent Ms. Edmonds for to do so would breach his fiduciary duty to Mr. Zaid. Id. In continuing to represent Ms. Edmonds he must necessarily advocate both her credibility and integrity. Doing so would result in him tacitly ratifying if not endorsing the credibility and veracity of her allegations against Mr. Zaid. Id.

These circumstances present an appropriate circumstance as Ms. Edmonds and her spouse have conducted themselves in such an obdurate or vexatious manner that they have rendered the representation unreasonably difficult. Therefore, the undersigned should be permitted to withdraw from their representation in this case.

## II.  THE GRANTING OF THIS MOTION TO WITHDRAW WOULD NOT PREJUDICE THE PLAINTIFF OR UNDULY DELAY THIS CASE

This case is in its infancy. It was filed on March 16, 2005, but service was not immediately effected due to the existence of other pending litigation. The Government only filed its initial Motion to Dismiss on September 20, 2005. Ms. Edmonds' response is currently due on December 21, 2005 (a contemporaneous Motion for Extension seeking 60 days is being filed to allow the Court to first resolve this Motion and/or to permit Ms. Edmonds time to secure new counsel). No discovery has taken place. No court appearances have occurred. Indeed, no significant expenditure of time has been devoted by either side or the Court. See Zaid Decl. at ¶19.

Thus, there will no actual or perceived prejudice incurred by Ms. Edmonds were the undersigned to withdraw. New counsel can easily be brought up to speed on Ms. Edmonds' claims (and the undersigned counsel are, of course, more than willing to cooperate with any new

counsel). Moreover, Ms. Edmonds has been and ostensibly remains represented by not only the ACLU but at least one other attorney in New York City who continues to provide her legal advice. In fact, several of the members of NSWB are attorneys as well, and no doubt they can provide legal assistance. Id. at ¶20. It may very well be that she can persuade one or more of these attorneys to assist her in the substantive aspects of the case, or at least to help locate new counsel.

Finally, any claim by Ms. Edmonds that this would cause a significant financial burden upon her merely creates an additional ground for the undersigned to seek withdrawal. While it is always preferable that civil litigants are represented by counsel by no means is it required. Plaintiffs represent themselves every single day in a *pro se* capacity. In any event, mere financial hardship is not grounds for entitling a civil litigant to legal counsel, especially under the circumstances that now exist with these lawyers and this client.

## **CONCLUSION**

Neither Messrs. Krieger nor Zaid dislike Ms. Edmonds. To the contrary, they respect her a great deal. Nonetheless, her conduct was deplorable and inappropriate and it represents a continuing pattern that simply can no longer be ignored or tolerated, especially when she publicizes her very personal criticism of her legal counsel.

Based on the foregoing, the undersigned respectfully request that their Motion to Withdraw be granted.

Date:   December 13, 2005

Respectfully submitted,

/s/

_____

Roy W. Krieger, Esq. (D.C. Bar #375754)
Mark S. Zaid, Esq. (D.C. Bar #440532)
Krieger & Zaid, PLLC
1920 N Street, N.W.
Suite 300
Washington, D.C.  20036
(202) 223-9050