UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIBEL EDMONDS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-540 (RMC) |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Sibel Edmonds brought this suit against her former employer, the United States (the "Government"), under the Federal Tort Claims Act, 28 U.S.C. § 2671-2680 (the "FTCA"). The Federal Bureau of Investigation ("FBI") employed Ms. Edmonds as a civilian linguist. She accused another employee of misconduct, and she complained of alleged security breaches. Subsequently, the FBI terminated Ms. Edmonds's employment. In this suit, she contends that the Government committed various torts when it investigated her complaints and fired her. The Government has moved to dismiss Ms. Edmonds's "negligent investigation" claim due to failure to exhaust administrative remedies. The Government also has moved to dismiss the remainder of Ms. Edmonds's tort claims for lack of subject matter jurisdiction and for failure to state a claim under the FTCA. Because the Government's motion to dismiss is well-founded, it will be granted. However, the Court will provide Ms. Edmonds an opportunity to file an Amended Complaint no

later than July 27, 2006, to state a claim for intentional conversion should she choose to do so.

## I.  BACKGROUND FACTS[1]

Ms. Edmonds is a U.S. citizen of Turkish descent, and she is fluent in Turkish and Farsi.  Complaint ("Compl.") ¶ 8.  Much of her family still resides in Turkey, and prior to 2000, she visited that country for two to three months every year.  *Id*. ¶ 9.  In September 2001, the FBI offered a job to Ms. Edmonds to work as a translator on its counter-terrorism and counter-intelligence investigations.  *Id.* ¶ 10.  The FBI requires applicants for linguist and monitor positions to pass a polygraph exam and a background investigation.  *Id.* ¶ 13.  Ms. Edmonds passed the exam and investigation, was granted Top Secret security clearance, and began her employment with the FBI. *Id.* ¶ 14.  The FBI allegedly assured Ms. Edmonds that her Turkish business interests would not be jeopardized due to her employment with the FBI and that she did not need to use an alias to protect her identity because her coworkers would have undergone a similar security check.  *Id.* ¶15.

During her employment at the FBI, Ms. Edmonds reported various whistleblower allegations to management officials.  She claimed that an FBI monitor, Melek Can Dickerson, previously had been employed by an organization that was a target of an ongoing FBI investigation; had ongoing contacts with investigation targets; leaked information to such targets; translated wiretaps concerning these targets; and told others not to translate such wiretaps.  *Id.* ¶ 17.  Ms. Edmonds alleges that in retaliation for her reporting this information to FBI management, Ms. Dickerson threatened to disclose Ms. Edmonds's identity to the target organization, thereby

---

[1] The facts are taken from the Complaint.  Only for the purpose of its motion to dismiss, the Government does not dispute these facts.

jeopardizing the safety of Ms. Edmonds and her extended family in Turkey. *Id.* The Complaint further alleges that Ms. Dickerson and her husband, Air Force Major Dickerson, suggested that because Ms. Edmonds was employed by the FBI, she could become a member of a certain Turkish organization, and that, as a result of such membership, she would be guaranteed a lucrative retirement in Turkey. *Id.* ¶18.

Ms. Edmonds wrote a memorandum on her home computer describing her allegations regarding security problems in the FBI language department. *Id.* ¶ 21. Later, the FBI determined that the memo contained classified information and seized her home computer. *Id.* On February 12, 2002, the FBI security office interviewed Ms. Edmonds about her allegations. *Id.* ¶ 23. The next day, the security office interviewed Ms. Dickerson. They were both deemed credible. *Id.* In March 2002, both Ms. Edmonds and Ms. Dickerson underwent polygraph examinations. Both denied that they had disclosed classified information, and both were determined to be truthful. *Id.* ¶¶ 33, 36, 39. Subsequently, the Department of Justice, Office of Inspector General ("OIG"), conducted an internal investigation; the OIG determined that the FBI's investigation had been "superficial," "flawed," and "mishandled." *Id.* ¶¶ 23, 69.

Ms. Edmonds told her sister, who lived in Turkey, about Ms. Dickerson's threats to reveal Ms. Edmonds's identity to the target organization. Fearing for her safety, Ms. Edmonds's sister fled Turkey and moved to the United States. *Id.* ¶ 24. Later, the Turkish security force allegedly served a warrant at the former residence of Ms. Edmonds's sister, seeking the sister's arrest for interrogation purposes. *Id.* ¶¶ 41, 43.

On March 22, 2002, the FBI terminated Ms. Edmonds's employment. *Id.* ¶ 38. Ms.

Edmonds claims that she was fired in retaliation for her whistleblower activity. The FBI contends that she had breached security rules and that "her disruptiveness hurt her on-the-job performance." *Id.* ¶¶ 38, 52. She contends that, when she was fired, FBI management officials made rude and disparaging comments to her. *Id.* ¶ 38. They escorted her from the building and did not permit her to retrieve personal items. *Id.*

Ms. Edmonds continued to press her accusations regarding misconduct and security breaches in the FBI's language department, notifying Attorney General Ashcroft, FBI Director Mueller, and Senator Grassley of such concerns.[2] *Id.* ¶¶ 43-44. Various newspapers published articles about her accusations and cited anonymous government sources who identified Ms. Edmonds by name. *Id.* ¶¶ 46-49. Further, Ms. Edmonds alleges that her former supervisor discussed a newspaper article about Ms. Edmonds and her accusations at a meeting with FBI translators. Pl.'s Opp'n at 9-11. In October 2002, July 2003, and April 2004, Turkish newspapers published articles identifying Ms. Edmonds by name, stating that she betrayed Turkey by spying on Turks for the U.S. Government, and stating that she accused Turkish officials of espionage against the United States. *Id.* ¶¶ 55-61.

As a result of these events, Ms. Edmonds contends that she lives in fear for the safety of herself and her family and she cannot visit Turkey. *Id.* ¶ 68. She claims to have suffered the following economic losses:

> 1) she had to forfeit her share in her deceased father's clinic in Turkey because she could not travel there to sign documents entitling her to

---

[2] Ms. Edmonds also requested that the Air Force investigate wrongdoing by Major Dickerson. Compl. ¶ 53. The Air Force found "no deviation from the scope of his duties." *Id.* ¶ 54.

an inheritance;

2) her vacation property and investment property located in Turkey have deteriorated in value and yet these properties continue to produce maintenance expenses;

3) she had to abandon her share in a Turkish textile business;

4) she had to abandon her real estate investment business in Turkey;

5) she paid for her sister's airline ticket to help her flee Turkey;

6) she lost personal items that she was not permitted to retrieve when the FBI fired her;

7) she has incurred attorney fees; and

8) she has suffered lost income and "may never be able to obtain employment again because of the public antipathy [generated] towards her by the FBI."

*Id.* Ms. Edmonds filed this suit against the Government alleging a single count under the FTCA[3] and

---

[3] Ms. Edmonds has pursued other lawsuits arising from the circumstances of her dismissal by the FBI.  First, she filed a case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, seeking documents. *Edmonds v. FBI*, 02-1294 (D.D.C. filed June 27, 2002) ("*Edmonds I*"). In that case, Judge Ellen S. Huvelle granted partial summary judgment in favor of the FBI, holding that certain documents were exempt from disclosure under FOIA's classified information exemption. *Edmonds v. FBI*, 272 F. Supp. 2d 35, 46-47 (D.D.C. 2003) . Subsequently, the parties settled *Edmonds I*. *Edmonds I*, Stipulation for Compromise Settlement [Dkt. #77] (D.D.C. Jan. 24, 2006).  Second, Ms. Edmonds brought suit against the Department of Justice alleging violations of the Privacy Act, 5 U.S.C. § 552a *et seq.*, the Administrative Procedures Act, 5 U.S.C. § 551-52, 701-06, and the First and Fifth Amendments. *Edmonds v. Dep't of Justice*, 02-1448 (D.D.C. filed July 22, 2002) (*Edmonds II*). Judge Reggie B. Walton dismissed *Edmonds II*, finding that the Government had properly invoked the state secrets privilege. *Edmonds v. Dep't of Justice*, 323 F. Supp. 2d 65, (D.D.C. 2004), *aff'd*, 2005 WL 3696301 (D.C. Cir. May 6, 2005) (affirming for reasons stated in district court's opinion).  Third, Ms. Edmonds filed a FOIA suit against the Department of Justice. *Edmonds v. Dep't of Justice*, 04-1623 (D.D.C. filed Sept. 22, 2004) ("*Edmonds III*"). As in *Edmonds I*, Judge Ricardo M. Urbina granted partial summary judgment, finding certain documents exempt from disclosure. *Edmonds v. Dep't of Justice*, 405 F. Supp. 2d 23 (D.D.C. Dec. 19, 2005). The parties then voluntarily dismissed *Edmonds III*.  *Edmonds III*, Notice of Voluntary Dismissal [Dkt. #24] (D.D.C. Jan. 24, 2006).

setting forth the following theories of recovery: negligent investigation of Ms. Edmonds's whistleblower allegations and of Ms. Dickerson's suitability to hold a Top Secret clearance; negligent public disclosure of Ms. Edmonds's identity; negligent endangerment; negligent conversion of personal property; "false light" invasion of privacy; negligent infliction of emotional distress; and negligent interference with prospective economic opportunity. *Id.* ¶¶ 73-80.

## II.  STANDARD OF REVIEW

The Government moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).  In ruling on a motion to dismiss, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 761 (D.C. Cir. 1997).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *accord Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).  A court may dismiss a complaint for lack of subject matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To determine whether it has jurisdiction

over the claim, a court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III. ANALYSIS

Absent a specific waiver, the United States is protected from suit by the doctrine of sovereign immunity. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA extends a limited waiver of sovereign immunity, which provides a remedy against the Federal Government for some torts committed by federal employees in the scope of their employment. 28 U.S.C. § 1346(b); *Sloan v. Dep't of Housing and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).

#### A. Exhaustion of Remedies

The FTCA bars claimants from bringing suit until they have exhausted their administrative remedies. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also* 28 U.S.C. § 2675(a) ("[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency."). The exhaustion requirement is jurisdictional. *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).

In order to exhaust administrative remedies under the FTCA, a plaintiff must have presented the agency with "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation and (2) a sum-certain damages claim," and the agency must have either denied the claim in writing or failed to provide a final disposition within six months of the filing of the claim. *Id.* at 905. For example, in *Murphy v. United States*, 121 F. Supp. 2d 21, 27 (D.D.C. 2000), *aff'd*, 64 Fed. Appx. 250 (D.C. Cir. 2003), a Secret Service agent had a work-related confrontation with his supervisor and then complained to management that he had been

assaulted by the supervisor. Secret Service management concluded that the agent's allegations lacked merit. The agent then filed an administrative claim alleging assault, negligent failure to investigate, and negligent failure to manage the supervisor. Later in court, the agent added a claim of "false light" invasion of privacy. Judge Robertson dismissed the "false light" claim due to failure to exhaust because the agent's administrative complaint did not provide notice of such a claim. The court explained that the facts underlying a "false light" claim are quite different than the facts underlying a claim for assault and negligence. *Id.* at 27; *accord Bembenista v. United States*, 866 F.2d 493, 499 (D.C. Cir. 1989) (finding that plaintiffs failed to exhaust medical malpractice claim, as their administrative claim alleged assault; attachment of medical records to administrative claim did not provide sufficient notice of malpractice claim).

Ms. Edmonds claims that the Government negligently investigated her whistleblower allegations and negligently investigated Ms. Dickerson's suitability to hold a security clearance. However, she failed to present these claims in her administrative complaint. The administrative complaint stated *in toto*:

> Ms. Edmonds had been employed at the FBI as a civilian linguist until being told on March 22, 2002 that her employment was being summarily terminated. Concurrent with being terminated, Ms. Edmonds was subjected to verbal abuse, profanity and threats by her supervisors and others involved in her case. She was denied the opportunity to retrieve personal effects from her desk, which remain in the custody of the FBI to this date despite repeated requests for their return. Subsequently, the FBI wrongfully disclosed extensive information about the nature of her case, including her identity and the nature of her work. These disclosures have placed Ms. Edmonds [sic] life in danger and continue to prevent her from ever returning to her native country. Because she could not return to address legal issues following

>   the death of her father, in November, 2003 she was forced to abandon her interest in his surgical clinic. Also because of these disclosures, Ms. Edmonds' [sic] sister was forced to flee that same country and now lives in the United States.
>
>   The conduct of the FBI in this matter has negligently endangered the life of Ms. Edmonds, converted her personal property, caused false light invasion of privacy, emotional distress and financial loss. Ms. Edmonds demands compensatory damages in the amount of ten million ($10,000,000) dollars.

Def.'s Mot. to Dismiss, Ex. A, Pl.'s Administrative Claim.

Ms. Edmonds's administrative claim alleged torts based on conduct that occurred at the time of her termination and thereafter. She alleged verbal abuse and withholding of her personal property on the day she was fired. Further, she alleged wrongful disclosure and "false light" invasion of privacy after she was fired. The administrative claim raised no allegations regarding events that occurred prior to or during her employment — expressly absent are any allegations regarding negligent investigation of Ms. Edmonds's accusations of misconduct and security breaches and any allegations of negligent investigation relating to Ms. Dickinson's security clearance. The facts underlying her allegations of negligent investigation are markedly different than the facts underlying her claims for negligent endangerment, negligent disclosure, conversion, and "false light" invasion of privacy. *See Murphy*, 121 F. Supp. 2d at 27.

In response to the Government's motion to dismiss, Ms. Edmonds contends that the Government should have notified her of the "failure in her presentment." Pl.'s Opp'n at 7. There is no legal or logical support for such a proposition. The Government cannot be expected to be a mind reader — it cannot be required to notify Ms. Edmonds of her own claims. Because Ms.

Edmonds asserted claims of negligent investigation for the first time in her Complaint filed in this Court, she failed to exhaust her administrative remedies with regard to these claims.[4] Thus, the Court lacks jurisdiction over these claims, and they must be dismissed.

### B. FTCA's Exemption for Claims "Arising Out of" Defamation

Ms. Edmonds exhausted her administrative remedies for the remainder of her claims; however, each of these claims either does not come within the terms of the FTCA or falls under an exception to the FTCA.

Claims that fall under one of the exceptions to the FTCA must be dismissed for lack of subject matter jurisdiction. *Sloan*, 236 F.3d at 759; *see also* 28 U.S.C. § 1346(b) (defining jurisdiction for FTCA claims). Under one such exception, the FTCA exempts from its waiver of sovereign immunity any claim "arising out of" libel or slander. 28 U.S.C. § 2680(h). Courts consistently have held that claims for "false light" invasion of privacy are barred by the libel and

---

[4] Even if Ms. Edmonds had exhausted her remedies for the negligent investigation claims, these claims would be dismissed because they fall under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Decisions regarding whether to prosecute and how to prosecute a criminal violation are discretionary. *Torres-Dueno v. United States*, 165 F. Supp. 2d 71, 74 (D.P.R. 2001) (decision to investigate and how to carry out investigation are within the FTCA's discretionary function exception); *Murphy*, 121 F. Supp. 2d at 26 (negligent investigation claim against agency barred by discretionary function exception; agency investigation decisions are analogous to prosecutorial decisions); *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) (law enforcement decisions – investigative and prosecutorial – are discretionary and immune from judicial review). *Sloan*, 236 F.3d at 762 ("[T]he sifting of evidence, the weighing of its significance, and the myriad of other decisions made during investigations plainly involve elements of judgment and choice."). In addition, personnel decisions such as hiring and supervision are also within the FTCA's discretionary function exception. "In this circuit, federal government hiring and employee supervision decisions are generally held to 'involve the exercise of political, social, or economic judgment' and therefore, to fall withing the scope of the United States' sovereign immunity." *Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 82 (D.D.C. 2005) (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)).

slander exception. *Johnson v. Sawyer*, 47 F.3d 716, 732 n.34 (5th Cir. 1995); *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir. 1986). Accordingly, Ms. Edmonds's claim for "false light" invasion of privacy must be dismissed for lack of subject matter jurisdiction.

Similarly, Ms. Edmonds's claims of negligent disclosure, negligent endangerment, negligent infliction of emotional distress, and negligent interference with prospective economic opportunity also must be dismissed under the libel and slander exception because all of these claims "arise out of" libel or slander. Claims, no matter how they are described by a plaintiff, based on dissemination of defamatory information pertaining to a federal investigation are barred by the libel/slander exemption. *Kugel v. United States*, 947 F.2d 1504 (D.C. Cir. 1991). "[T]he label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states. And surely a litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized." *Johnson v. United States*, 547 F.2d 688, 691 (D.C. Cir. 1976) (citation omitted).

The government conduct that is alleged to have caused the injury determines the essential nature of the cause of action. *Kugel*, 947 F.2d at 1507. In *Kugel*, the plaintiff alleged that he was injured by an FBI investigation of his business practices, when reports appeared in the media and he was later exonerated. The plaintiff claimed that he was forced to file bankruptcy and he suffered stress-related seizures. The D.C. Circuit examined the nature of his claim and found that the cause of his injury was not the investigation, but was instead the dissemination of information associated with the investigation. *Id*. The Circuit concluded that the plaintiff's claim sounded in defamation and was exempt under the FTCA. *Id*.

Similarly, in *Popovic v. United States*, No. 98-1432, 1999 WL 228243 (4th Cir. Apr. 20, 1999), a National Institutes of Health scientist was investigated for allegedly misappropriating a discovery made by French researchers. The federal investigators reported that the scientist had falsified data, but after an administrative appeal, the appeals board found that the investigators had not proven their claims by a preponderance of the evidence. *Id*. at *2. The scientist then brought suit under the FTCA. The district court dismissed the suit pursuant to the slander/libel exception, and the scientist appealed, arguing that his complaint did not claim defamation. The Fourth Circuit denied the appeal and affirmed the district court, finding that "the acts complained of were defamatory acts", *id*. at *5, because the scientist's complaint alleged that the Government disseminated information regarding the charges and investigation, thus damaging the scientist's reputation and ability to obtain a new job. *Id*. at *4; *see also Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) (because Government's actions underlying slander claim were the basis for claim for negligent infliction of emotional distress, the distress claim must be dismissed as "arising out of" slander); *cf. Black v. Sheraton Corp. of America*, 564 F.2d 531, 540-41 (D.C. Cir.1977) (dissemination of information and injury to reputation did not arise from defamation; injury stemmed from Government's illegal placement of a wiretap — conduct giving rise to claims of trespass and invasion of privacy).

Here, Ms. Edmonds claims that the Government disclosed her identity, the nature of her work, her accusations of misconduct and security breaches, and information relating to the resulting investigation. These disclosures occurred when FBI officials allegedly leaked information to the media anonymously and when her former supervisor discussed a newspaper article about Ms.

Edmonds and her accusations at a meeting of FBI translators. These disclosures allegedly injured her reputation, thereby generating ill-will toward her in the United States and Turkey and causing her to fear for the safety of herself and her family. Further, the injury to her reputation allegedly prevented Ms. Edmonds from traveling to Turkey to deal with her properties, businesses, and business opportunities, and prevented her from obtaining a new job. Ms. Edmonds argues that her claims do not sound in defamation.

The action of the Government of which Ms. Edmonds complains is the FBI's disclosure of information, allegedly resulting in injury to her reputation, economic harm, and emotional distress. The essence of the Complaint is a defamation claim. Because the claims for negligent disclosure, negligent endangerment,[5] negligent infliction of emotional distress, and negligent interference with prospective economic opportunity[6] arise from defamation, they are barred under section 2680(h). The Court must dismiss these claims for lack of subject matter jurisdiction and for failure to state a claim.

### C.  Tort Liability of a "Private Person" Under D.C. Law

Finally, the Complaint alleges "negligent" conversion of personal property, based on the FBI's refusal to permit Ms. Edmonds to retrieve personal property from her desk when she was fired. However, this claim must be dismissed because there is no such claim under applicable D.C.

---

[5] Ms. Edmonds also argues that by claiming negligent endangerment, she does not seek to redress injury to her reputation but instead seeks damages from being put at risk of physical injury. As explained above, the government action complained of is defamation — the dissemination of information that impaired her reputation and thus allegedly caused her to be at risk of physical harm.

[6] Claims for interference with prospective business advantage also may be barred as claims arising out of interference with contract rights under 28 U.S.C. § 2680(h). *Art Metal-U.S.A. Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985).

law. The FTCA only waives sovereign immunity where "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *accord id*. § 2674 (U.S. shall be liable in the same manner as a private individual under like circumstances). In this case, the alleged conversion occurred in the District of Columbia. Under D.C. law, conversion is defined as an intentional tort — "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel." *Fed. Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 92 n.3 (D.D.C. 2003). There is no liability under D.C. law for "negligent" conversion[7] and therefore, Ms. Edmonds's claim for negligent conversion is not within the scope of the FTCA and must be dismissed.[8] However, Ms. Edmonds may be able to state a claim under the FTCA for intentional conversion, as defined above. Accordingly, she may file an Amended Complaint on or before July 27, 2006, to state a claim for intentional conversion.[9] If she fails to do so, this case will be dismissed.

---

[7] The "private person" liability requirement similarly bars Ms. Edmonds's claims for negligent disclosure. *Tripp v. United States*, 257 F. Supp. 2d 37, 44 (D.D.C. 2003) (claim for negligent disclosure of plaintiff's personal information by Department of Defense dismissed because D.C. law does not preclude a private employer from disclosing the same type of information the Department of Defense disclosed).

[8] The Government notes in its motion to dismiss that "because the fair market value of the alleged loss, 'including a personal calendar, notes, and family photographs,' (Compl. ¶ 38) appears to be insubstantial, the United States is seeking to resolve this claim by agreement." Def.'s Mot. to Dismiss at 38-39 n.11. The Court encourages the Government to resolve Ms. Edmonds's claim regarding her personal property.

[9] The Court has not determined at this juncture that Ms. Edmonds in fact can state a claim for conversion or that such a claim would survive a motion to dismiss or for summary judgment.

## IV. CONCLUSION

As explained above, Ms. Edmonds's claims for negligent investigation are barred due to failure to exhaust administrative remedies. The other theories of recovery in the Complaint either do not come within the terms of the FTCA or are exempt under the FTCA. Accordingly, the Government's motion to dismiss [Dkt. #6] will be granted, and Ms. Edmonds's claim under the FTCA on theories of negligent investigation; negligent disclosure; negligent endangerment; negligent conversion of personal property; "false light" invasion of privacy; negligent infliction of emotional distress; and negligent interference with prospective economic opportunity will be dismissed. However, the Court will permit Ms. Edmonds to file an Amended Complaint on or before July 27, 2006, to state a claim for intentional conversion, if she wishes to do so. If she fails to timely file an Amended Complaint, this case will be dismissed in whole. A memorializing order accompanies this Memorandum Opinion.

_____/s/_____
ROSEMARY M. COLLYER
DATE: June 27, 2006                           United States District Judge