UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SIBEL EDMONDS, ) |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| v. ) | Civil Action No. 05-540 (RMC) |
| ) |  |
| UNITED STATES, ) |  |
| ) |  |
| Defendant. ) |  |

**MEMORANDUM OPINION**

Plaintiff Sibel Edmonds brought this suit against her former employer, the United States (the "Government"), alleging intentional conversion under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA").[1]  The Federal Bureau of Investigation ("FBI") employed Ms. Edmonds as a civilian linguist.  She accused another employee of misconduct, and she complained of alleged security breaches.  The FBI subsequently terminated Ms. Edmonds's employment.  Ms. Edmonds alleges that when she was fired she was not permitted to retrieve her personal property and thus the Government improperly retained (intentionally converted) three family photographs belonging to her.  The Government has conceded liability, but contests damages.

The issue of damages was tried to the Court on May 20, 2008.  Based on the entire record including the parties' pretrial and post-trial briefs, the parties' exhibits and stipulations, and the testimony of the sole witness, Ms. Edmonds, the Court concludes that the Government must pay

---

[1] The original complaint in this matter [Dkt. # 1] included other claims that were dismissed by the Court in a Memorandum Opinion and Order [Dkt. ## 22 & 23] filed June 27, 2006.  On July 27, 2006, Ms. Edmonds filed an Amended Complaint [Dkt. # 24] alleging a single count of intentional conversion.

damages to Ms. Edmonds to compensate for the special value of the first two missing photographs and to compensate for the nominal value of the third photograph. Judgment will be entered in favor of Ms. Edmonds in the amount of $5,005.00.

## I. FINDINGS OF FACT

1. Sibel Edmonds is a U.S. citizen of Turkish descent, and she is fluent in English, Turkish, and Farsi. Compl. ¶ 8; Tr. at 24.[2]

2. She was employed by the FBI as a contract translator starting in September 2001. Am. Compl. at 2.

3. On March 22, 2002, the FBI terminated Ms. Edmonds's employment.[3] *Id*.

4. FBI employees escorted Ms. Edmonds from the building and did not permit her to retrieve personal items from her desk, which included three photographs of her father. *Id*.

5. On July 27, 2006, Ms. Edmonds filed an Amended Complaint [Dkt. # 24] alleging that the Government intentionally converted the three photos of her father, Dr. Rasim Deniz, designated as Photograph One, Photograph Two, and Photograph Three.

6. The Government did not contest liability with respect to the claim for loss of the three photos, but did contest the amount of damages to be awarded. *See* Def.'s Notice of No Contest [Dkt. # 25] filed Aug. 11, 2006; Stipulations [Dkt. # 49] ("Stip.") # 1.

---

[2] "Tr." refers to the unofficial transcript of the May 20, 2008 bench trial.

[3] The nature of Ms. Edmonds's job and the circumstances of her termination are not relevant to this lawsuit.

7. Photograph One was a black and white photo of Dr. Deniz in his school uniform in ninth grade at the time of his acceptance into a high school called Darolfonun in Iran. Am. Comp. at 2;[4] Tr. at 27-28.

8. Darolfonun High School was a school for gifted but underprivileged children. Tr. at 28.

9. Photograph One was taken around 1948 or 1949. Tr. at 54. It measured three by five inches or five by seven inches and was in good condition, without cracks or tears. Tr. at 54-55.

10. Photograph Two was a photo of Dr. Deniz receiving a silver medal at a track meet when he was approximately seventeen years old. Am. Compl. at 2;[5] Tr. at 27.

11. Pictured in Photograph Two were Dr. Deniz and the Minister of Education who presented the medal, which was awarded formally by the Shah of Iran. Tr. at 28.

12. Photograph Two was taken sometime between 1951 and 1953. Tr. at 54. It measured approximately two by four inches in size and was in good condition with a sepia tone. Tr. at 55. The borders were torn, but the photo was not. *Id*.

13. Ms. Edmonds has more than one hundred thirty (130) other photos of her father, *see* Stip. ## 8-27, but no other photos of her father's high school years. Tr. at 30-31 & 52-53. She believes that there are no other such photos in existence. *Id*.

---

[4] The Amended Complaint designated the photo of Ms. Edmonds's father at the time of his high school acceptance as photograph two, but Ms. Edmonds in her testimony at trial designated this photo as Photograph One, and the Court adopts this designation.

[5] The Amended Complaint designated the photo of Ms. Edmonds's father receiving a medal as photograph one, but Ms. Edmonds in her testimony designated this photo as Photograph Two, and the Court adopts this designation.

14. Photograph Three was a picture of Dr. Deniz at Ms. Edmonds's wedding in 1992. Tr. at 29.[6] It was taken by Ms. Edmonds's husband at no cost to Ms. Edmonds. Stip. # 7.

15. Ms. Edmonds has many photos from her wedding, and she has the negatives of such photos; thus, she did not place any special value on Photograph Three. Tr. at 29; Stip. #3.

16. Dr. Deniz died in 2000. Tr. at 29; Stip. # 50.

17. At the time of her father's death, as the oldest child in the family, Ms. Edmonds was the person designated to take possession of his personal items, including Photographs One and Two. Tr. at 29; Stip. #6. Ms. Edmonds was given these photos at no cost to her. Stip. # 6.

18. Photographs One and Two had special value to Ms. Edmonds.

19. Photograph One was significant because the acceptance of Dr. Deniz into Darolfonun High School allowed him obtain an education and to rise out of extreme poverty. Tr. at 31 & 41.

20. Photograph Two was significant because the award of the silver track medal permitted him to obtain a scholarship to a university, and later to become a well-known surgeon. Tr. at 32 & 41.

21. Ms. Edmonds kept Photographs One and Two inside the front page of her leather bound calendar/organizer, and she would see them often. Tr. at 41.

22. Ms. Edmonds was close to her father, and he was a role model to her. Tr. at 32. She testified, "He and his life and what he did despite difficulties shaped my own approach of how to live my life and to not ever give up, to work hard for things that are important . . . So it's guided my whole lifestyle, my own outlook." Tr. at 32.

---

[6] The Amended Complaint misidentifies Photograph Three as a photo of Ms. Edmonds's immediate family in Istanbul, Turkey.

23. Starting on the day her employment with the FBI was terminated, Ms. Edmonds attempted to get the three photographs back. Tr. at 32. That day she complained to the Office of Professional Responsibility that she was not permitted to retrieve her personal belongings from her desk. Tr. at 32-33.

24. Ms. Edmonds also contacted the Inspector General's office regarding the photos. Tr. at 33.

25. Subsequently, Ms. Edmonds contacted attorneys to assist her in attempting to retrieve the photos as well as to pursue other claims against the Government.[7]

26. Ms. Edmonds hired the law firm of Kohn, Kohn, and Colapinto. Tr. at 34.

27. That firm sent her a bill for over $114,000. Pl.'s Trial Ex. 1. She paid them $30,000. Tr. at 36. Ms. Edmonds estimated that 25% of the bill was attributable to her efforts to retrieve the photos at issue here. Tr. at 37.

---

[7] In addition to this lawsuit, Ms. Edmonds pursued other suits arising from the circumstances of her dismissal by the FBI. First, she filed a case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, seeking documents. *Edmonds v. FBI*, No. 02-1294 (D.D.C. filed June 27, 2002) ("*Edmonds I*"). In that case, the court granted partial summary judgment in favor of the FBI, holding that certain documents were exempt from disclosure under FOIA's classified information exemption. *Edmonds v. FBI*, 272 F. Supp. 2d 35, 46-47 (D.D.C. 2003). Subsequently, the parties settled *Edmonds I*. *Edmonds I*, Stipulation for Compromise Settlement [Dkt. # 77] (D.D.C. Jan. 24, 2006). Second, Ms. Edmonds brought suit against the Department of Justice alleging violations of the Privacy Act, 5 U.S.C. § 552a *et seq*., the Administrative Procedures Act, 5 U.S.C. §§ 551-52, 701-06, and the First and Fifth Amendments. *Edmonds v. Dep't of Justice*, No. 02-1448 (D.D.C. filed July 22, 2002) ("*Edmonds II*"). The court dismissed *Edmonds II*, finding that the Government had properly invoked the state secrets privilege. *Edmonds v. Dep't of Justice*, 323 F. Supp. 2d 65 (D.D.C. 2004), *aff'd*, No. 04-5286, 2005 WL 3696301 (D.C. Cir. May 6, 2005) (affirming for reasons stated in district court's opinion). Third, Ms. Edmonds filed a FOIA suit against the Department of Justice. *Edmonds v. Dep't of Justice*, No. 04-1623 (D.D.C. filed Sept. 22, 2004) ("*Edmonds III*"). As in *Edmonds I*, the *Edmonds III* court granted partial summary judgment, finding certain documents exempt from disclosure. *Edmonds v. Dep't of Justice*, 405 F. Supp. 2d 23 (D.D.C. Dec. 19, 2005). The parties then voluntarily dismissed *Edmonds III*. *Edmonds III*, Notice of Voluntary Dismissal [Dkt. # 24] (D.D.C. Jan. 24, 2006).

28. Subsequently, Ms. Edmonds hired the law firm of Krieger and Zaid to replace Kohn, Kohn, and Colapinto. Tr. at 34; *see* Pl.'s Trial Ex. 2. She paid the Krieger and Zaid firm $18,569, and estimates that 50% of this was attributable to her efforts to retrieve the photos at issue here. Tr. at 38.

29. Ms. Edmonds settled a prior suit against the FBI and received $65,000 in satisfaction of her claims and for attorney fees. The Kohn firm represented her at the time of settlement. *See* Def.'s Trial Ex. 21, Stipulation for Compromise Settlement in *Edmonds v. FBI*, No. 02-1294 (D.D.C. Jan. 24, 2006).

30. Ms. Edmonds claims that Photographs One and Two would have increased the value of a book she may publish in the future. Stip. # 2.

31. Ms. Edmonds does not have a contract to write a book, has no offers of a book contract under consideration, and has no prospective offers of a book contract. Stip. # 29.

32. Ms. Edmonds designated Ellen Levine and Greg Lawrence as experts regarding the value of the lost photographs. Def.'s Mot. to Strike Experts [Dkt. # 43], Ex. A Pl.'s Disclosure Pursuant to Rule 26(a)(2).[8]

33. Ms. Levine is Ms. Edmonds's literary agent who is trying to find a publisher for the book Ms. Edmonds is writing. Stip. # 31.

---

[8] The Government moved to strike these experts, arguing that their testimony was not relevant and would not be helpful. The Court denied the motion because this matter was to be tried to the bench; thus, the Court could determine the weight to give the evidence and there was no risk of jury confusion. *See* Order [Dkt. # 46] filed Apr. 7, 2008 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993)). At trial, the parties submitted excerpts from the depositions of the experts as exhibits, and the Court admitted the exhibits into evidence. *See* Def.'s Exs. 17 & 18.

34. Mr. Lawrence is an author who has been assisting Ms. Edmonds with writing and editing her draft manuscript. Stip. # 33.

35. Ms. Levine and Mr. Lawrence reviewed a preliminary draft of Ms. Edmonds's manuscript in formulating their expert opinions. Stip. # 35.

36. Ms. Levine gave her opinion of the value of Photographs One and Two in a single sentence: "The photographs in question would significantly enhance a book and/or magazine excerpt I would be selling for Ms. Edmonds." Def.'s Mot. to Strike Experts [Dkt. # 43], Ex. B Expert Witness Report.

37. Mr. Lawrence opined:

> Based on my experience, I can testify to the fact that every photograph associated with a book is worth its weight in gold in a highly competitive market. . . . Photo rights can be quite substantial for the use of a photo on the book's cover and for promotional/marketing purposes. There is also a wide range of prices paid for photos that are used in the interior of the book. In the case of Sibel Edmonds [sic] book, at least one of the photographs of her late father would be used on the book's cover because his life story makes him a central figure in the book.

Def.'s Mot. to Strike Experts [Dkt. # 43], Ex. D Expert Witness Report.

38. Ms. Levine and Mr. Lawrence did not put a monetary value or a range of values on the lost photos. Stip. # 30.

39. Ms. Levine and Mr. Lawrence did not use any formal methodology in formulating their opinions. Stip. # 43.

40. Prior to this case, Ms. Levine and Mr. Lawrence have never provided formal opinions regarding the monetary value of photographs for book contracts. Stip. # 37.

41. Ms. Levine and Mr. Lawrence have never received any training on valuing photographs for book contracts. Stip. # 39.

42. Ms. Levine and Mr. Lawrence never saw the lost photos at issue and have no personal knowledge of the quality of the lost photos. Stip. ## 40 & 42.

43. Despite the Government's requests[9] and despite a Court Order,[10] Ms. Edmonds did not produce a copy of the draft manuscript to the Government until trial was completed. She finally produced the manuscript to counsel for the Government when the Court held her in contempt and ordered her to produce the manuscript at the end of trial. *See* Tr. at 4.

44. Ms. Edmonds values the lost photographs at $150,000. Tr. at 43.

45. The Government contends that Ms. Edmonds should receive nominal damages of $5.00 per photo. Tr. at 61.

## II. CONCLUSIONS OF LAW

Under D.C. law, conversion is defined as an intentional tort — "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel." *Fed. Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 92 n.3 (D.D.C. 2003). The Government has conceded liability for conversion, but it contests damages.

In order to determine the value of the photos, under D.C. law the Court must determine "the fair market value of the property in question at the time of the conversion." *Maalouf*

---

[9] The Government requested at least twice that Ms. Edmonds produce a copy of the manuscript. *See* Def.'s Mot. to Strike Experts [Dkt. # 43], Exs. G & H.

[10] On April 7, 2008, the Court ordered Ms. Edmonds to produce a copy of her manuscript marked "counsel eyes only" to counsel for the Government. *See* Order [Dkt. # 46].

*v. Butt*, 817 A.2d 189, 190 (D.C. 2003); *Bowler v. Joyner*, 562 A.2d 1210, 1213 (D.C. 1989). Although the D.C. Court of Appeals has not addressed the issue of whether damages for conversion can be based on sentimental value, the Restatement (Second) Torts[11] and the majority of courts in other jurisdictions hold that sentimental value is not recoverable. Section 911 of the Restatement provides that "value" means exchange value or the *value to the owner where this is greater than the exchange value*. Restatement (Second) Torts § 911 (1979) (emphasis added). Comment e to the Restatement provides:

> If the subject matter cannot be replaced, however, as in the case of a destroyed or lost family portrait, the owner will be compensated for its special value to him, as evidenced by the original cost, and the quality and condition at the time of loss. . . . In these cases, however, damages cannot be based on sentimental value. Compensatory damages are not given for emotional distress caused merely by the loss of such things.

Restatement (Second) Torts § 911 Cmt. e. In sum, when the lost item is a family portrait, the owner may be compensated for "special value" to her — as evidenced by the original cost and the quality and condition at the time of loss — but may not be compensated for sentimental value. *Accord Kondaurov v. Kerdasha*, 629 S.E.2d 181, 187 n.5 (Va. 2006) (citing *C&O Ry. Co. v. May*, 92 S.E. 801, 803 (1917) (owners of lost family portraits not entitled to recover sentimental value)); *Robinson v. United States*, 175 F. Supp. 2d 1215, 1232-33 (E.D. Cal. 2001) (personal memorabilia such as trophies and yearbooks are subject to a rational, not a sentimental, valuation).

        Despite the limitation on compensation for sentimental value, a minority of courts in other jurisdictions have valued property based on the "feelings" of the owner. Ms. Edmonds

---

[11] In the past, the D.C. Court of Appeals has adopted the Restatement when statutory or case law is silent on the relevant issue. *See, e.g., Wright v. Sony Pictures Entertainment, Inc.*, 394 F. Supp. 2d 27, 33 (D.D.C. 2005).

argues that the Court should follow the minority. Pl.'s Trial Mem. at 3. In *Mieske v. Bartell Drug Co.*, 593 P.2d 1308, 1311 (Wash. 1979), the court explained:

> What is sentimental value? The broad dictionary definition is that sentimental refers to being governed by feeling, sensibility or emotional idealism. . . . Webster's Third New International Dictionary (1963). Obviously that is not the exclusion contemplated by the statement that sentimental value is not to be compensated. If it were, no one would recover for the wrongful death of a spouse or a child. Rather, the type of sentiment which is not compensable is that which relates to indulging in feeling to an unwarranted extent or being affectedly or mawkishly emotional.

*Id*. at 1311; *accord Bond v. A.H. Belo Corp.*, 602 S.W.2d 105, 109 (Tex. Civ. App. 1980) (correct measure of damages for lost family papers and photos was reasonable special value of such articles to the owner taking into consideration the owner's feelings); *see also Campins v. Capels*, 461 N.E.2d 712, 721 (Ind. App. 4 Dist. 1984) (in cases dealing with lost family photos and the like, sentimental value should be considered).

The Court will follow the Restatement and the majority of courts, and apply the rule that in the case of missing family photos, special value to the owner can be recovered, but sentimental value cannot.[12] While Ms. Edmonds does not assert any special value with regard to

---

[12] D.C. law governs this suit. Under D.C. choice of law rules, the law of the jurisdiction with the most substantial interest in the matter applies. *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 150 (D.D.C. 2002); *Jaffe v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004). Under this test, the Court must balance the competing interests of the two jurisdictions and apply the law of the jurisdiction with the more substantial interest. *Id*. The Court must consider (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Herbert v. Dist. of Columbia*, 808 A.2d 776, 779 (D.C. 2002); Restatement (Second) of Conflict of Laws § 145 (1971). Even though Ms. Edmonds lives in Virginia, D.C. law controls because the parties' relationship was centered in the FBI's Washington, D.C. field office and the conversion occurred in that office. Moreover, D.C. and Virginia law do not conflict regarding valuation of personal property. As explained above, the District of Columbia would apply the Restatement, and the Restatement rule is the same as that set

Photograph Three, she demonstrated that Photographs One and Two had special value to her. When she was not permitted to retrieve her personal belongings upon her termination by the FBI, she immediately sought to recover the photos. Tr. at 32-33. She complained to the Office of Professional Responsibility and hired attorneys to assist her in recovering the photos. *Id*. at 33-34. Although Photographs One and Two came into Ms. Edmonds's possession at no cost to her, *see* Stip. # 7, they were in good condition when they were lost and they were irreplaceable. *See* Tr. 54-55. There appear to be no other photos in existence of Ms. Edmonds's deceased father during his high school years. *Id*. at 30-31 & 52-53. The photos had special significance to Ms. Edmonds because they were pictures of her father at critical moments in his life. *Id*. at 31-32 & 41. Photograph One pictured Dr. Deniz when he was accepted into a special high school for gifted but poor children, and Photograph Two depicted Dr. Deniz when he received a track medal, which provided him a college scholarship. Ms. Edmonds was close to her father, and she has modeled her life after his. *Id*. at 32.[13] Accordingly the Court finds that Photographs One and Two should be valued at $2,500.00 each. Ms. Edmonds did not attach any special value to Photograph Three; thus, the Court awards nominal damages of $5.00 for the loss of Photograph Three.

---

forth in Virginia case law. *Compare* Restatement (Second) Torts § 911 Cmt. e *with Kondaurov*, 629 S.E.2d at 187 n.5.

[13] Ms. Edmonds's evidence that she paid substantial attorney fees in order to attempt to recover the photos does not establish the value of the missing photos but does serve as some evidence that the photos meant a great deal to her. Ms. Edmonds testified that she paid the Kohn firm $30,000, 25% of which ($7,500) was attributable to her efforts to retrieve the photos and that she paid the Krieger firm $18,569, 50% of which ($9,284.50) was attributable to her efforts to retrieve the photos. Tr. at 36-38. In a settlement in another suit, the FBI agreed to pay the Kohn firm $65,000 in full satisfaction of Ms. Edmonds's claims and attorney fees in that case. *See* Def.'s Trial Ex. 21, Stipulation for Compromise Settlement in *Edmonds v. FBI*, No. 02-1294 (D.D.C. Jan. 24, 2006). Thus, Ms. Edmonds already received substantial compensation for her attorney fees.

Ms. Edmonds also presented expert testimony[14] in support of her claim that the missing photos would have increased the value of a book she is in the process of writing and plans to publish. While the Court denied the Government's motion to strike the experts, *see* Order [Dkt. # 46] (denying motion to strike experts), and admitted portions of the experts' deposition testimony, *see* Def.'s Exs. 17 & 18, the Court gives the expert testimony no weight as it is wholly based on speculation.[15] "Expert testimony that rests solely on 'subjective belief or unsupported speculation' is not reliable." *Groobert v. President and Dirs. of Georgetown Coll.*, 219 F. Supp. 2d 1, 6 (D.D.C. 2002); *see Daubert*, 509 U.S. at 588 (expert's opinion must be based on more than subjective belief or unsupported speculation). Ms. Edmonds does not have a book contract or any prospective offers of a book contract. Stip. #29. Thus, her contention that the photos would have increased the value of her book is based on the hope that she will one day complete writing a book, obtain a contract to publish a book, and find a publisher who wants to include photos and who would have paid more for publication rights if it had photos of Dr. Deniz's high school years. The experts did not put a value or a range of values on the missing photos. Stip. # 30. The Government asked Ms. Levine, "Why is it that you can't really say on a specific basis [that] this particular photo would add this amount of value to a book deal?" Ms. Levine answered, "I don't think there's any way to measure that exactly." Def.'s Ex. 17 at 23. Mr. Lawrence indicated, "The way that I see they have value [is]

---

[14] The qualifications of Ms. Edmonds's experts is questionable. Prior to this case, Ms. Levine and Mr. Lawrence have never provided formal opinions regarding the monetary value of photographs for book contracts. Stip. # 37. Further, they have never received any training on valuing photographs for book contracts. Stip. # 39.

[15] It should also be noted that Ms. Edmonds did not afford the Government the opportunity to cross examine her experts with regard to her draft because she improperly withheld production of the manuscript until the end of trial when she finally turned over a copy of the manuscript in compliance with the Court's contempt order.

. . . within the context of a proposal and manuscript that we submit to a publisher and hopefully establish a deal. But I can't pin it down further than that, no." Def.'s Ex. 18 at 142.[16] Accordingly, the Court finds the experts' testimony to be unreliable.

### III. CONCLUSION

For the foregoing reasons, judgment will be entered in favor of Ms. Edmonds in the amount of $5,005.00. This Memorandum Opinion is accompanied by a memorializing order.


Date: June 30, 2008                                 _____/s/_____
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge

---

[16] Further, the experts provided no methodology or principles upon which they based their opinions that the missing photos would enhance the value of the book Ms. Edmonds may publish. The Government asked Mr. Lawrence, "Is some of this subjective in terms of determining the value of a photograph?" He answered, "I believe the entire process is subjective." Def.'s Ex. 18 at 112. Similarly, the Government asked Ms. Levine if there is any methodology for valuing a photo for use in a book. Ms. Levine responded, "You know, it's a kind of immeasurable thing." Def.'s Ex. 17 at 24.